UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JERRY KITCHENS JR, ET AL | CIVIL ACTION |
| VERSUS | No.: 18-9218 |
| ROY DYSON, ET AL | SECTION: "J" (1) |

## ORDER & REASONS

Before the Court is a *Motion for Summary Judgment* **(Rec. Doc. 29)** filed by Defendants Roy Dyson, AmTrust North America, Inc., Beacon Transport, LLC, and Wesco Insurance Company (Collectively "Defendants"), an opposition thereto (Rec. Doc. 31) filed by Plaintiff Jerry Kitchens, Jr. ("Kitchens"), and a reply (Rec. Doc. 37) by Defendants. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

The instant litigation derives from a motor vehicle accident between Kitchens and Defendant Roy Dyson, ("Dyson"), a truck driver employed by Beacon Transport, LLC ("Beacon"). The accident occurred at roughly 5:00 a.m. on July 2, 2018 near the I-10/610 Westbound split. Kitchens lives in Slidell and routinely uses I-10 West and 610 to commute to work at Louis Armstrong New Orleans International Airport every morning. The stretch of road where the accident occurred has a maximum speed limit of sixty miles per hour and a minimum speed limit of forty miles per hour.

I-10 is four lanes wide at the split. The lane furthest to the right ("Lane 1") must merge onto 610. The lane second furthest to the right ("Lane 2") has the option to either continue on 1-10 or merge onto 610. The two lanes furthest left must stay on I-10. On the morning of July 2, Kitchens was traveling around 60 miles per hour in Lane 1. There were two cars ahead of him. Kitchens proceeded to switch into Lane 2 because he wanted a lane to himself while merging onto 610.

Kitchens states in his deposition that he saw no obstruction in Lane 2 when he began to switch lanes. Only after completing the switch to Lane 2 did Kitchens spot Dyson's truck ahead of him in the same lane, moving so slowly that Kitchens perceived it to be stopped entirely. Almost instantly after perceiving Dyson's truck, Kitchens rear-ended it with his own vehicle.

Dyson had slowed at the time of the accident to allow a semi-truck to merge into Lane 2 front of him. Although he does not state the speed at which he was traveling in his affidavit, Dyson told the police officer who responded to the crash that he had slowed to roughly 30 miles per hour at the time of the crash.[1] The responding police officer cited Kitchens for following too closely and reckless driving, but Kitchens successfully challenged the two citations in traffic court. On December 13, 2019, Defendants filed the present motion to dismiss.

## **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as

---

[1] In his deposition, Kitchens comes very close to outright contradicting Dyson's claim that he had only slowed to 30 miles per hour. Kitchens seems to believe Dyson had come to almost a complete stop. *See* (Rec. Doc. 31-1 at p. 48).

2

to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element

3

of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.

## **DISCUSSION**

As Kitchens will bear the burden of proving Dyson's fault at trial, Defendants may satisfy their summary judgment burden by merely pointing out the evidence in the record is insufficient with respect to an essential element of Kitchen's claim. *See Celotex*, 477 U.S. at 325. Defendants attempt to meet this burden by relying on the presumption that a rear-end motorist is at fault in a motor vehicle accident. *Mart v. Hill*, 505 So. 2d 1120, 1123 (La. 1987) ("[A] following motorist in a rear-end collision is presumed to have breached the standard of conduct prescribed in La. Rev. Stat. Ann. 32:81 and hence is presumed negligent."). Here, it is undisputed that Kitchens rear-ended Dyson and thus the presumption applies.

Nevertheless, a rear-ending driver may rebut the presumption of negligence by establishing that he "kept his vehicle under control, closely observed the forward vehicle and followed at a safe distance under the circumstances." *Eubanks v. Brasseal*, 310 So. 2d 550, 553 (La. 1975). Alternatively, a following motorist can shift liability by showing "that the driver of the lead vehicle negligently created a hazard that the following vehicle could not reasonably avoid." *Rudd v. United Services Automobile Association*, 626 So.2d 568 (La. App. 3rd Cir.1993). Defendants point to

4

the responding officer's citation of Kitchens and the lack of a "hard brake" by Dyson as evidence that Kitchens cannot rebut the presumption in either manner.[2]

Kitchens counters by asserting that Dyson's negligent did in fact create a hazard that he could not reasonably avoid. Kitchens' position is premised primarily on the argument that Dyson was going unreasonably slow in violation of La. R.S. 32: 63(B).[3] The Court finds that there exists a genuine issue of material fact as to whether slowing below the 40 miles per hour minimum speed zone negligently created a hazard that Kitchens could not reasonably avoid. *See Rudd*, 626 So. 2d at 568.

Defendants cite several cases in support of the proposition that drivers may be held at fault for rear-ending a stalled or stopped vehicle. *See Bertrand v. Henry*, 01-348 (La. App. 3 Cir. 12/19/01), 815 So. 2d. 868, 871; *Bordelon v. S. Cent. Bell. Tel. Co.*, 617 So. 2d 1337 (La. App. 3 Cir. 1993); *Toten v. Gen. Motors. Corp.*, 479 So. 2d. 957 (La. App. 3 Cir. 1985); *Bates v. Prater*, 42, 149 (La. App. 2 Cir. 5/9/07), 956 S0. 2d 814; *Brady v. Global Hark Insurance Company*, No. 17-433, 2017 WL 4619740, at 4* (E.D. La. Oct. 2017). While it is certainly true that the factfinder may eventually determine that fault in these situations lies solely with the trailing vehicle, such a determination is extremely fact-intensive. All cases cited by Defendants are thus inapposite in the sense that all contain significant factual differences from the case at bar.

---

[2] "A 'hard brake' event is defined as a decrease of speed of at least 9 miles per hour per second." (Rec. Doc. 29-6).
[3] "Whenever the department determines on the basis of an engineering and traffic investigation that slow speeds on any highway of this state, or part thereof, consistently impede the normal and reasonable movement of traffic, the department may determine and declare a minimum speed limit thereat, below which no person shall drive a vehicle except when necessary for safe operation or in compliance with law. Minimum speeds so determined shall become effective upon the erection of signs giving notice thereof." Here the minimum speed limit was 40 miles per hour and Dyson was traveling at most at 30 miles per hour." La. R.S. 32: 63(B).

5

In *Bertrand*, the appellate court apportioned fault between three parties in a three-car pile-up accident.[4] The court found the appropriate apportionment of fault to be 25% to the foremost driver for "stopping his Cadillac in the travel lane," and 75% to the rearmost driver for choosing "not to apply his brakes aggressively." *Bertrand*, 815 So. 2d at 874. Thus, not only was some portion of fault given to the initial stopped vehicle, but the court also heavily based its decision on its finding that the rearmost driver could have avoided the accident by braking.

In *Bordelon*, the appellate court upheld a jury determination that the driver of a stalled vehicle was not contributorily negligent for parking his stalled vehicle on the side of the highway. 617 So. 2d at 1341. The court's decision was premised in part on the fact that the driver of the stalled vehicle had no choice but to park it where he did, considering the vehicle "was disabled and there was no shoulder on the bridge." *Id.* It is not clear in the present case that Dyson was similarly forced to place his vehicle in a compromising position or whether he simply chose to do so. The *Bordelon* court also noted the evidence showed the rear-ending driver had a significant amount of time to see the stalled vehicle and avoid it. *Id.*

The facts in *Toten* were virtually identical to the facts in *Bordelon*, as was the rationale in finding that the driver of the stalled vehicle was not negligent. 479 So. 2d at 959. *Toten* is even more distinguishable from the present case because the following driver in *Toten* was intoxicated, which contributed greatly to his failure to avoid the stalled vehicle. *Id.*

---

[4] Bertrand was also a review of a jury verdict, not a summary judgment award.

6

Both *Brady* and *Bates*, the only two summary judgment cases cited by Defendants, rely heavily on the presence of traffic congestion in finding the trailing car wholly responsible for the accident.[5] *See Brady*, 2017 WL 4619740 * 4 ("[Front Driver] was driving in stop and go traffic, and at some moments the vehicle was stopped and at other times he was able to move 10 to 15 miles an hour."); *Bates*, 956 So. 2d at 818 (Declining to assign fault to the foremost driver when the "vehicle was stopped on an interstate because of congested traffic caused by a prior accident. In such instances it would be impracticable for the lead motorist to do anything other than come to a stop behind the traffic ahead of him."). The existence of congestion or stop-and-go traffic plays dual roles in the apportionment of fault. First, it means the foremost driver was not negligent, as the only reasonable thing to do in such a situation is stop for traffic. Second, the presence of stop-and-go traffic gives reasonable following drivers a heightened awareness of potential stopped or slowed vehicles in front of them.

Considering the absence of any evidence of congestion or traffic in the present case, neither conclusion can be drawn at this stage. It is not clear from the record that Dyson's only practical option was to slow down significantly under the minimum speed limit, nor that Kitchens should have been aware of any heightened potential for a stopped or slowed vehicle in front of him. On the contrary, it is hard to imagine a time with less traffic or congestion than 5:00 a.m.

---

[5] Additionally, in *Brady* the trailing driver failed to provide any evidence they were driving safely under the circumstances. 2017 WL 4619740 *3. The *Brady* court also relied heavily on the responding police officer's report assigning blame to the rear-ending vehicle. *Id.* Here, Kitchens has provided some testimony indicating that he was not driving in a clearly dangerous manner. Additionally, although Kitchens was cited by the responding officer just like the driver in *Brady*, those citations were eventually dismissed by traffic court.

7

Moreover, the Court is further convinced of the inappropriateness of summary judgment at this stage in light of the existence of comparative fault. In Louisiana, the regime of comparative fault governs negligence cases, even negligence cases with a legal presumption. In discussing the interplay between comparative fault and the rear-ending presumption of negligence, the court in *Matherne v. Lorraine* stated, "[t]he key point here is that the following motorist must exonerate himself from fault before he can *completely* avoid liability. The presumption does not in and of itself preclude an apportionment of fault to the lead driver where negligence can be shown…[accordingly the] assignment of error is without merit insofar as it alleges that [the rear driver] must totally rebut the presumption of his fault as the rear-ending driver before the trial court can apportion a degree of fault to [the foremost driver]." 2003-2369 *3 (La. App. 1 Cir. 9/17/04) 888 So. 2d 244, 246.

There is a genuine issue of material fact as to whether Dyson's decision to slow significantly below the minimum speed to allow another truck to merge in front of him was unreasonable enough to rebut the rear-end presumption of negligence and apportion Dyson some level of fault for the accident. For that reason, summary judgment in favor of Defendants is inappropriate at this time.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' *Motion for Summary Judgment* **(Rec. Doc. 29)** is hereby **DENIED**.

New Orleans, Louisiana this 21st day of January, 2020.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE